UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

JEAN-ETIENNE DE BECDELIEVRE and          )          Case No. 1:16-cv-09471-AKH
TAMS-WITMARK MUSIC LIBRARY, INC.,        )
                                         )
                    Plaintiffs,          )
                                         )
            against                      )
                                         )
ANASTASIA MUSICAL LLC and                )
TERRENCE McNALLY,                        )
                                         )
                    Defendants.          )
_____      )

## PLAINTIFFS' RESPONSE TO DEFENDANTS' LOCAL RULE 56.1 STATEMENT AND COUNTER-STATEMENT OF ADDITIONAL MATERIAL DISPUTED FACTS

Pursuant to S.D.N.Y. Local Civil Rule 56.1, plaintiffs Jean-Etienne de Becdelievre ("de Becdelievre") and Tams-Witmark Music Library, Inc. ("TWML") (collectively, "plaintiffs") hereby respond to the correspondingly numbered paragraphs of defendants' Local Rule 56.1 Statement (the "Statement"), as follows:

### PARAGRAPH NO. 1:

Defendants' Broadway musical titled *Anastasia* (the "Musical") was first presented in Hartford, Connecticut on May 13, 2016. 1st Am. Compl. (Dkt. No. 26) ("Compl.") ¶ 40.

### RESPONSE NO. 1:

Undisputed.

### PARAGRAPH NO. 2:

Defendant Terrance McNally is credited for writing the book of the Musical. Declaration of Dale M. Cendali, Esq. (Dkt. No. 39) ("Cendali Decl.") Ex. O, at 1; Compl. ¶ 35.

**RESPONSE NO. 2:**

Undisputed insofar as this paragraph of the Statement is construed to aver that the

Musical's[1] credits identify defendant Terrance McNally ("McNally") as the author of the book of

the Musical.

**PARAGRAPH NO. 3:**

Stephen Flaherty is credited for having composed the music of the Musical.  Cendali Decl. Ex.

O, at 1.

**RESPONSE NO. 3:**

Undisputed insofar as this paragraph of the Statement is construed to aver that the

Musical's credits identify Stephen Flaherty as the composer of the music of the Musical.

**PARAGRAPH NO. 4:**

Lynn Ahrens is credited for writing the lyrics of the Musical.  Cendali Decl. Ex. O, at 1.

**RESPONSE NO. 4:**

Undisputed insofar as this paragraph of the Statement is construed to aver that the

Musical's credits identify Lynn Ahrens as the writer of the lyrics of the Musical.

**PARAGRAPH NO. 5:**

The Musical opened on Broadway on April 24, 2017.  Compl. ¶ 41.

**RESPONSE NO. 5:**

Undisputed.

**PARAGRAPH NO. 6:**

A copy of the script of Defendants' Musical is attached to the Cendali Declaration as Exhibit O.
Cendali Decl. Ex. O; *see also* Declaration of Matthew H. Giger (Dkt. No. 30) Ex. A.

---

[1] For the Court's convenience, capitalized terms used herein shall have the same meaning
ascribed to them in defendants' Statement.

**RESPONSE NO. 6:**

     Undisputed.

**PARAGRAPH NO. 7:**

Marcelle Maurette is credited as having written a non-musical (aka "straight play") in French, titled *Anastasia* (the "French Play") in the 1940's.

**RESPONSE NO. 7:**

     Undisputed, except that, when it was written in the 1940's, the play was alternatively

titled "La Tsarine" or "L'Inconnue," although it later became known as "Anastasia."

**PARAGRAPH NO. 8:**

A copy of the script of the French Play is attached to the Declaration of Joshua L. Simmons, Esq. (Dkt. No. 15) ("Simmons Declaration") as Exhibit B.  Simmons Decl. Ex. B.

**RESPONSE NO. 8:**

     Undisputed.

**PARAGRAPH NO. 9:**

A copy of a certified, direct translation of the French Play into English is attached to the Simmons Declaration as Exhibit C.  Simmons Decl. Ex. C.

**RESPONSE NO. 9:**

     Undisputed insofar as this paragraph of the Statement is construed to describe the

document that is referenced in said paragraph, as opposed to the substance thereof.

**PARAGRAPH NO. 10:**

Guy Bolton ("Bolton") is credited as having adapted the French Play into English and publishing an English adaptation of *Anastasia* (the "English Adaptation") in 1952.  Compl. ¶ 10.

**RESPONSE NO. 10:**

     Undisputed.

**PARAGRAPH NO. 11:**

A copy of the script of the English Adaptation is attached to the Simmons Declaration as Exhibit A. Simmons Decl. Ex. A.

**RESPONSE NO. 11:**

　　Undisputed.

**PARAGRAPH NO. 12:**

Plaintiffs Jean-Etienne de Becdelievre and Tams-Witmark Music Library, Inc. ("Plaintiffs") respectively claim to be the successors-in-interest to the copyright interests of Marcelle Maurette in the French Play and the English Adaptation, and of Bolton in the English Adaptation. Compl. ¶ 2-3.

**RESPONSE NO. 12:**

　　Undisputed, although in so responding, plaintiffs aver that de Becdelievre is the

successor-in-interest to the copyright interest of Marcelle Maurette in the French Play and the

English Adaptation, and that TWML is the successor-in-interest to the copyright interest of

Bolton in the English Adaptation. (Declaration of Matthew H. Giger ("Giger Decl."), at ¶ __.)

**PARAGRAPH NO. 13:**

Plaintiffs refer to the French Play and the English Adaptation collectively in the Complaint as "the Play" (hereinafter "Plaintiffs' Play"). Compl. ¶ 10.

**RESPONSE NO. 13:**

　　Undisputed.

**PARAGRAPH NO. 14:**

Plaintiffs write in their Complaint that Plaintiffs' Play is "based, in part, on certain historical events." Compl. ¶ 2-3.

**RESPONSE NO. 14:**

Undisputed, although in so responding, plaintiffs aver that, in this action, they do not

allege infringement of any portion of Plaintiffs' Play that is based on historical events.  (See

Compl. ¶¶ 49, 50.)

**PARAGRAPH NO. 15:**

Bolton wrote an article in the *New York Times* in 1954 titled "The Riddle of Anastasia" (the
"Bolton Article").  Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 15:**

Undisputed, although in so responding, plaintiffs aver that the Bolton Article constitutes

inadmissible hearsay and is, in any event, not competent proof of the purported events described,

and thus cannot be used in the context of a summary judgment motion as evidence of any

purported "historical fact."  Further responding, plaintiffs aver that the Bolton Article post-dates

the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation

of Plaintiffs' Play.  (See *supra* ¶ 7.)

**PARAGRAPH NO. 16:**

A copy of the Bolton Article is attached to the Simmons Declaration as Exhibit G.  Simmons
Decl. Ex. G.

**RESPONSE NO. 16:**

Undisputed, although in so responding, plaintiffs aver that the Bolton Article constitutes

inadmissible hearsay and is, in any event, not competent proof of the purported events described,

and thus cannot be used in the context of a summary judgment motion as evidence of any

purported "historical fact."  Further responding, plaintiffs aver that the Bolton Article post-dates

the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation

of Plaintiffs' Play.  (See *supra* ¶ 7.)

**PARAGRAPH NO. 17:**

The Bolton Article explains the "facts" of the survival of Grand Duchess Anastasia from the assassination of her family.  Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 17:**

    Undisputed that the Bolton Article purports to describe certain facts, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of the Bolton Article or cites to the same out of context or in a misleading fashion, any such statements are disputed.  In so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact."  Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play.  (See *supra* ¶ 7.)  Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 18:**

The Bolton Article states that Plaintiffs' Play "[d]eals [w]ith [the] famous case of [the] resurrected Russian [p]rincess." Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 18:**

    Undisputed that the Bolton Article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed.  In so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact."  Further

responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play.  (See *supra* ¶ 7.)

## PARAGRAPH NO. 19:

Bolton explains that "[o]n July 17, 1918, the Czar, his wife, their four daughters and young son were herded into the cellar of a house in a Siberian mining town and brutally shot."  Simmons Decl. Ex. G, at 1.

## RESPONSE NO. 19:

Undisputed that the Bolton Article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed.  In so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact."  Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play.  (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 20:

The Complaint alleges that it is a historical fact that there was a "phenomenon" of "imposters" who claimed to be Romanov children who had survived the assassination.  Compl. ¶11 (characterizing as a "historical event[]" the phenomenon of imposters claiming to be surviving Romanov children").

## RESPONSE NO. 20:

Undisputed, although in so responding, plaintiffs aver that, as alleged in the Complaint, "the Play's plot, scenes, dialogue and (with few exceptions) characters are entirely original and

fictitious." (Compl. ¶ 11.)  Further responding, plaintiffs aver that they do not allege

infringement of any portion of Plaintiffs' Play that is based on historical events.

**PARAGRAPH NO. 21:**

Bolton wrote that he was first aware of the story of the possible survival of Grand Duchess
Anastasia in 1928.  Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 21:**

Undisputed except to the extent that this paragraph of the Statement misstates or

mischaracterizes the substance or import of the Bolton Article or cites to the same out of context

or in a misleading fashion, in which event any such statements are disputed.  In so responding,

plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not

competent proof of the purported events described, and thus cannot be used in the context of a

summary judgment motion as evidence of any purported "historical fact."  Further responding,

plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore

could not have served as any basis for the creation of Plaintiffs' Play.  (See *supra* ¶ 7.)  Further

responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement

are irrelevant to the parties' dispute.

**PARAGRAPH NO. 22:**

Bolton wrote that the "facts" of the story of Anastasia's escape were that "two members of the
guard, brothers named Chaikovski, discovered that, despite multiple wounds, the youngest of the
four princesses, then 17 years old, still lived."  Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 22:**

Undisputed that the Bolton Article contains the referenced quotation, although to the

extent that this paragraph of the Statement misstates or mischaracterizes the substance or import

of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed.  In

so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in

any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See supra ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 23:**

Bolton wrote that the additional "facts" of the story of Anastasia's escape were that "the Chaikovskis carried the unconscious girl away in a farm cart." Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 23:**

Undisputed that the Bolton Article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See supra ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 24:**

The Bolton Article detailed additional "facts" that "[u]sing the jewels sewn in her clothes to support them on the way," Anastasia and the Chaikovskis traveled "to Bucharest." Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 24:**

Undisputed that the Bolton Article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 25:**

Bolton wrote that additional "facts" of the story of Anastasia's escape were that Anastasia then made the "journey to Berlin without passport or adequate funds." Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 25:**

Undisputed that the Bolton Article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.)

Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 26:**

Bolton wrote that it was the "truth" that "the dubious marriage ceremony of Anastasia with the elder Chaikovski" took place during their "trek." Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 26:**

Undisputed that the Bolton Article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 27:**

Bolton wrote that additional "facts" of the story of Anastasia's escape were that "on the night of Feb. 17, 1920, on the very day that Anastasia had reached her long-sought goal, she threw herself into Berlin's Landwehr Canal! After her rescue she was committed to Dalldorf-Asylum, where she spent two and a half years." Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 27:**

Undisputed that the Bolton Article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In

so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 28:

Bolton wrote that additional "facts" of the story of Anastasia's escape were that "[a]t Dalldorf . . . she confided her story to one of the nurses, Sister Thea Malinovski," who "sought out some members of the Russian colony who had known the Imperial family and brought them to view the patient." Simmons Decl. Ex. G., at 1.

## RESPONSE NO. 28:

Undisputed that the Bolton Article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

12

**PARAGRAPH NO. 29:**

Anna Chaikovsky was the married name of the woman who later called herself Anna Anderson.
Simmons Decl. Ex.G., at 1; Ex. I, at 4.

**RESPONSE NO. 29:**

      Plaintiffs neither admit nor deny this paragraph of the Statement, and note that defendants

have not proffered any citation to competent, admissible evidence in support thereof.   In so

responding, plaintiffs aver that the Bolton Article, which is cited in ostensible support of said

paragraph, constitutes inadmissible hearsay and is, in any event, not competent proof of the

purported events described, and thus cannot be used in the context of a summary judgment

motion as evidence of any purported "historical fact."  Further responding, plaintiffs aver that the

purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 30:**

Bolton wrote that "Anna Chaikovski['s] . . . further history is a seesaw of recognition and
rejection."  Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 30:**

      Undisputed that the Bolton Article contains the referenced quotation, although to the

extent that this paragraph of the Statement misstates or mischaracterizes the substance or import

of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed.  In

so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in

any event, not competent proof of the purported events described, and thus cannot be used in the

context of a summary judgment motion as evidence of any purported "historical fact."  Further

responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and

therefore could not have served as any basis for the creation of Plaintiffs' Play.  (See *supra* ¶ 7.)

Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 31:**

Bolton wrote that part of Anna Chaikovski's "history" was that "[t]he Czar's cousin, the Grand Duke Andrew; George, Duke of Leuchtenberg, and the Princess Xenia Georgievna all rallied to [Ms. Chaikovski's] support." Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 31:**

Undisputed that the Bolton Article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 32:**

The Tsar's cousin, the Duke of Leuchtenberg, and the Princess Xenia Georgievna recognized Anna Chaikovski's claim to be Anastasia. Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 32:**

Plaintiffs neither admit nor deny this paragraph of the Statement, and note that defendants have not proffered any citation to competent, admissible evidence in support thereof. In so responding, plaintiffs aver that the Bolton Article, which is cited in ostensible support of said paragraph, constitutes inadmissible hearsay and is, in any event, not competent proof of the

purported events described, and thus cannot be used in the context of a summary judgment

motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the

purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 33:

Bolton wrote that multiple books and articles were written about how Anastasia escaped the
assassination of her family. Simmons Decl. Ex. G, at 1.

## RESPONSE NO. 33:

Undisputed except to the extent that this paragraph of the Statement misstates or

mischaracterizes the substance or import of the Bolton Article or cites to the same out of context

or in a misleading fashion, in which event any such statements are disputed. In so responding,

plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not

competent proof of the purported events described, and thus cannot be used in the context of a

summary judgment motion as evidence of any purported "historical fact." Further responding,

plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore

could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further

responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement

are irrelevant to the parties' dispute.

## PARAGRAPH NO. 34:

Bolton wrote that he had read "most of what ha[d] been written in English and French" on the
topic of Anastasia's escape. Simmons Decl. Ex. G, at 1.

## RESPONSE NO. 34:

Undisputed that the Bolton Article contains the referenced quotation, although to the

extent that this paragraph of the Statement misstates or mischaracterizes the substance or import

of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In

so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 35:

Bolton wrote that in 1931, "Gleb Blotkin, son of the Romanov family physician who was shot while trying to shield the Empress from the Bolshevik evolvers," wrote about "the case of the resurrected princess." Simmons Decl. Ex. G, at 1.

## RESPONSE NO. 35:

Undisputed that the Bolton Article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 36:**

According to the Bolton Article, Gleb Blotkin, "who had been a childhood playmate of the four princesses, was at first a stubborn disbeliever in Anastasia's escape but, after a long personal investigation, he became her most ardent champion." Simmons Decl. Ex. G, at 1.

**RESPONSE NO. 36:**

Undisputed that the Bolton Article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Bolton Article constitutes inadmissible hearsay and is, in any event, not competent proof of the purported events described, and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Bolton Article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 37:**

Gleb Blotkin's 1931 book was titled *The Real Romanovs*. Simmons Decl. Ex. F.

**RESPONSE NO. 37:**

Undisputed, although in so responding, plaintiffs aver that the referenced book constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the purported "fact" set forth in this paragraph of the Statement is irrelevant to the parties' dispute.

**PARAGRAPH NO. 38:**

A copy of excerpts from Gleb Blotkin's book titled *The Real Romanovs* is attached to the Simmons Declaration as Exhibit F. Simmons Decl. Ex. F.

**RESPONSE NO. 38:**

Undisputed, although in so responding, plaintiffs aver that the referenced book

constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment

motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the

purported "fact" set forth in this paragraph of the Statement is irrelevant to the parties' dispute.

**PARAGRAPH NO. 39:**

Gleb Blotkin wrote that "[s]ince 1918, [he] had met hordes of imposters, but it never took [him]
longer than five minutes to catch them in some flagrantly absurd statement." Simmons Decl. Ex.
F., at 263.

**RESPONSE NO. 39:**

Undisputed that the Blotkin book contains the referenced quotation, although to the

extent that this paragraph of the Statement misstates or mischaracterizes the substance or import

of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In

so responding, plaintiffs aver that the Blotkin book constitutes inadmissible hearsay and thus

cannot be used in the context of a summary judgment motion as evidence of any purported

"historical fact." Further responding, plaintiffs aver that the purported "facts" set forth in this

paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 40:**

Gleb Blotkin wrote that he traveled to "Seeon," where he was first refused by Anastasia, but
"decided to stay on for a few days, in the hope that the mysterious Madame Tschaikowsky might
come to change her mind." Simmons Decl. Ex. F., at 278.

**RESPONSE NO. 40:**

Undisputed that the Blotkin book contains the referenced quotation, although to the

extent that this paragraph of the Statement misstates or mischaracterizes the substance or import

of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In

so responding, plaintiffs aver that the Blotkin book constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 41:**

Gleb Blotkin wrote that when he did see Madame Tschaikowsky, he "was standing face to face with Anastasia." Simmons Decl. Ex. F, at 283.

**RESPONSE NO. 41:**

Undisputed that the Blotkin book contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Blotkin book constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 42:**

Gleb Blotkin wrote that he "passed a large part of the remaining days [he] spent at Seeon, in Anastasia's company." Simmons Decl. Ex. F, at 288.

**RESPONSE NO. 42:**

Undisputed that the Blotkin book contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Blotkin book constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported

"historical fact." Further responding, plaintiffs aver that the purported "facts" set forth in this

paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 43:

Gleb Blotkin wrote that he "saw how painful it was for [Madame Tschaikowsky] to be
questioned. She had been tortured with all sorts of queries, for the most part silly and tactless,
for seven years, and quite naturally had come to regard all questioning, [*sic*] as being, at best,
unfriendly and, quite often positively insulting." Simmons Decl. Ex. F, at 288.

## RESPONSE NO. 43:

Undisputed that the Blotkin book contains the referenced quotation, although to the

extent that this paragraph of the Statement misstates or mischaracterizes the substance or import

of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In

so responding, plaintiffs aver that the Blotkin book constitutes inadmissible hearsay and thus

cannot be used in the context of a summary judgment motion as evidence of any purported

"historical fact." Further responding, plaintiffs aver that the purported "facts" set forth in this

paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 44:

Gleb Blotkin wrote that Madame Tschaikowsly's "chief desire was to see her grandmother, the
Dowager-Empress, but this appeared to be no longer probable, as the Empress could not be
expected to live much longer." Simmons Decl. Ex. F, at 289.

## RESPONSE NO. 44:

Undisputed that the Blotkin book contains the referenced quotation, although to the

extent that this paragraph of the Statement misstates or mischaracterizes the substance or import

of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In

so responding, plaintiffs aver that the Blotkin book constitutes inadmissible hearsay and thus

cannot be used in the context of a summary judgment motion as evidence of any purported

"historical fact." Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 45:**

Arthur J. Olsen ("Olsen") wrote an article for the *New York Times* in 1958 titled "Anastasia: Grand Duchess or Grand Hoax?" Simmons Decl. Ex. I.

**RESPONSE NO. 45:**

Undisputed, although in so responding, plaintiffs aver that the referenced article constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the referenced article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.)

**PARAGRAPH NO. 46:**

A copy of Olsen's article titled "Anastasia: Grand Duchess or Grand Hoax?" is attached to the Simmons Declaration as Exhibit I. Simmons Decl. Ex. I.

**RESPONSE NO. 46:**

Undisputed, although in so responding, plaintiffs aver that the referenced article constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the referenced article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.)

**PARAGRAPH NO. 47:**

Olson wrote that "Frau Tchaikivsky" adopted the name of "Anna Anderson" when she was admitted to a "sanitarium at Katonah, N.Y." in 1930.

**RESPONSE NO. 47:**

Undisputed that the Olson article contains the referenced quotations, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of those quotations, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Olson article constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the referenced article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 48:**

Olson wrote that Anna Anderson claimed she was "suffering from partial amnesia" and was unsure of who she was or where she came from. Simmons Decl. Ex. I, at 4.

**RESPONSE NO. 48:**

Undisputed that the Olson article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Olson article constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the referenced article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 49:**

Olson wrote that "[s]ome persons have been attracted to the Anastasia cause in the hope of sharing in a Romanov fortune thought to exist." Simmons Decl. Ex. I, at 4.

**RESPONSE NO. 49:**

Undisputed that the Olson article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Olson article constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the referenced article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 50:**

Olson wrote that Baron Arthur von Kleist was "a German" with "many acquaintances among émigré Russian nobility in Berlin." Simmons Decl. Ex. I, at 1.

**RESPONSE NO. 50:**

Undisputed that the Olson article contains the referenced quotations, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of those quotations, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Olson article constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the referenced article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of

Plaintiffs' Play.  (See *supra* ¶ 7.)  Further responding, plaintiffs aver that the purported "facts"

set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 51:**

Olson wrote that "Baron von Kleist was impressed enough to take [Ms. Anderson] from Dalldorf
and place her in his house," where "[s]everal Russian emigres who had seen Anastasia at close
quarters 'recognized' her."  Simmons Decl. Ex. I, at 1.

**RESPONSE NO. 51:**

Undisputed that the Olson article contains the referenced quotation, although to the extent

that this paragraph of the Statement misstates or mischaracterizes the substance or import of that

quotation, or cites to the same out of context or in a misleading fashion, it is disputed.  In so

responding, plaintiffs aver that the Olson article constitutes inadmissible hearsay and thus cannot

be used in the context of a summary judgment motion as evidence of any purported "historical

fact."  Further responding, plaintiffs aver that the referenced article post-dates the creation of

Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs'

Play.  (See *supra* ¶ 7.)  Further responding, plaintiffs aver that the purported "facts" set forth in

this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 52:**

Olson wrote that Ms. Anderson was able to convince people that she was Anastasia by recalling
details of "personalities, events, and physical circumstances" that only would be known to
Anastasia.  Simmons Decl. Ex. I, at 2. ("Her most impressive credential –then and forever after –
was an apparently intimate knowledge of the personalities, events and physical circumstances of
the vanished Russian court.  It is beyond doubt that she was able to name correctly faces in
private photographs, describe specific events, identify uniforms, buildings, and locations.").

**RESPONSE NO. 52:**

Undisputed that the Olson article contains the referenced quotations, although to the

extent that this paragraph of the Statement misstates or mischaracterizes the substance or import

of those quotations, or cites to the same out of context or in a misleading fashion, it is disputed.

In so responding, plaintiffs aver that the Olson article constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the referenced article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 53:

Olson wrote that "[l]iving in Coenhagen was the aged mother of the murdered Czar, Maria Fedorovna. The active head of the family was her daughter, [the sister of the late czar,] the Grand Duchess Olga." Simmons Decl. Ex. I, at 3.

## RESPONSE NO. 53:

Undisputed that the Olson article contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Olson article constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the referenced article post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 54:

Olson wrote that Ms. Anderson intended to "reveal herself to Princess Irene of Prussia, the sister of the murdered Czarina and Anastasia's aunt," and that an acquaintance "arranged a confrontation with Princess Irene, who had last seen Anastasia as an 11-year old child." Simmons Decl. Ex. I., at 2.

**RESPONSE NO. 54:**

Undisputed that the Olson article contains the referenced quotations, although to the

extent that this paragraph of the Statement misstates or mischaracterizes the substance or import

of those quotations, or cites to the same out of context or in a misleading fashion, it is disputed.

In so responding, plaintiffs aver that the Olson article constitutes inadmissible hearsay and thus

cannot be used in the context of a summary judgment motion as evidence of any purported

"historical fact." Further responding, plaintiffs aver that the referenced article post-dates the

creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of

Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts"

set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 55:**

In addition to the preceding articles about Anastasia's alleged escape from the assassination,
James Blair Lovell wrote a book titled *Anastasia: The Lost Princess* ("*The Lost Princess*").
Simmons Decl. Ex. J.

**RESPONSE NO. 55:**

The first clause of this paragraph of the Statement is a characterization of counsel and

requires no response in this submission. Further responding, plaintiffs aver that the remainder of

said paragraph is undisputed, although in so responding, plaintiffs aver that the referenced book

constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment

motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the

referenced book post-dates the creation of Plaintiffs' Play and therefore could not have served as

any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver

that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties'

dispute.

**PARAGRAPH NO. 56:**

A copy of excerpts from *The Lost Princess* are attached to the Simmons Declaration as Exhibit J. Simmons Decl. Ex. J.

**RESPONSE NO. 56:**

Undisputed, although in so responding, plaintiffs aver that the referenced book constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the referenced book post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.)

**PARAGRAPH NO. 57:**

James Blair Lovell wrote in *The Lost Princess* that "[o]ne of the most persistent rumors was that one of the Romanov children had escaped the firing squad. Several pretenders to the identities of each of the daughters and the son emerged in various locations in Europe; all were quickly exposed as frauds. Yet refugees flooding Western Europe from the east continued to bring with them tales of a surviving Romanov daughter. Whether based on fact or wishful thinking, these stories flourished. By the early 1920s, the Romanovs in exile had become accustomed to hearing them, and tabloid newspapers made tidy profits from fueling the flame of hope in the displaced Russians' hearts." Simmons Decl. Ex. J, at 78.

**RESPONSE NO. 57:**

Undisputed that the Lovell book contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Lovell book constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Lovell book post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs'

Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 58:

James Blair Lovell wrote in *The Lost Princess* that "Anastasia realized that Baron Kleist hoped to benefit from having harbored the Czar's daughter, in the event of a restored Russian monarchy. He even asked her to sign a document guaranteeing him payment of a certain sum, if she were ever officially recognized." Simmons Decl. Ex. J, at 83.

## RESPONSE NO. 58:

Undisputed that the Lovell book contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so responding, plaintiffs aver that the Lovell book constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the Lovell book post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 59:

James Blair Lovell wrote in *The Lost Princess* that at the time Anna Anderson first claimed to be Anastasia, "[t]here were half a million foreign emigres in Germany [from Russia] at the time, one hundred thousand Russians in Berlin alone. Overburdened by the influx of foreign nationals, the German government was attempting to repatriate them as quickly as possible. [Ms. Anderson] knew that if she could be identified as Russian, she would be sent back to certain death in the country now controlled by the government that had slaughtered her family." Simmons Decl. Ex. J, at 74.

## RESPONSE NO. 59:

Undisputed that the Lovell book contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that

quotation, or cites to the same out of context or in a misleading fashion, it is disputed.  In so

responding, plaintiffs aver that the Lovell book constitutes inadmissible hearsay and thus cannot

be used in the context of a summary judgment motion as evidence of any purported "historical

fact."  Further responding, plaintiffs aver that the Lovell book post-dates the creation of

Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs'

Play.  (See *supra* ¶ 7.)  Further responding, plaintiffs aver that the purported "facts" set forth in

this paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 60:

James Blair Lovell wrote in *The Lost Princess* that when Anna Anderson met Princess Irene,
"instead of enjoying the imagined happy reunion with her beloved aunt, Anastasia found herself
being tested by a woman who had presented herself as a stranger." Simmons Decl. Ex. J, at 86–
87.

## RESPONSE NO. 60:

Undisputed that the Lovell book contains the referenced quotation, although to the extent

that this paragraph of the Statement misstates or mischaracterizes the substance or import of that

quotation, or cites to the same out of context or in a misleading fashion, it is disputed.  In so

responding, plaintiffs aver that the Lovell book constitutes inadmissible hearsay and thus cannot

be used in the context of a summary judgment motion as evidence of any purported "historical

fact."  Further responding, plaintiffs aver that the Lovell book post-dates the creation of

Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs'

Play.  (See *supra* ¶ 7.)  Further responding, plaintiffs aver that the purported "facts" set forth in

this paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 61:

James Blair Lovell wrote in *The Lost Princess* that, in a meeting with Duke Felix Dassel, Anna
Anderson "immediately referred to him as The Man With The Pockets–a nickname that the
Grand Duchess alone had ascribed to the officer, who had breached etiquette by keeping his

hands in his pockets when addressing her. Knowing that only the real Anastasia could have been aware of this fact, the stunned Dassel endorsed her immediately and wholeheartedly." Simmons Decl. Ex. J, at 131–134.

**RESPONSE NO. 61:**

      Undisputed that the Lovell book contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed.  In so responding, plaintiffs aver that the Lovell book constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact."  Further responding, plaintiffs aver that the Lovell book post-dates the creation of Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs' Play.  (See *supra* ¶ 7.)  Further responding, plaintiffs aver that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 62:**

James Blair Lovell wrote in *The Lost Princess* that Anna Anderson met the Grand Duchess Olga, who stated that her "intelligence will not allow [her] to accept her as Anastasia; but [her] heart tells [her] that it is she," and exchanged correspondence with Ms. Anderson that "confirmed Anastasia's belief that her aunt's visit laid to rest any controversy about her actual identity." Simmons Decl. Ex. J, at 103–106.

**RESPONSE NO. 62:**

      Undisputed that the Lovell book contains the referenced quotation, although to the extent that this paragraph of the Statement misstates or mischaracterizes the substance or import of that quotation, or cites to the same out of context or in a misleading fashion, it is disputed.  In so responding, plaintiffs aver that the Lovell book constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment motion as evidence of any purported "historical fact."  Further responding, plaintiffs aver that the Lovell book post-dates the creation of

Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs'

Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in

this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 63:**

James Blair Lovell wrote in *The Lost Princess* that when Princess Irene came to visit Ms.
Anderson to potentially recognize her as Anastasia, "she arrived with a lady-in-waiting."
Simmons Decl. Ex. J, at 86.

**RESPONSE NO. 63:**

Undisputed that the Lovell book contains the referenced quotation, although to the extent

that this paragraph of the Statement misstates or mischaracterizes the substance or import of that

quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so

responding, plaintiffs aver that the Lovell book constitutes inadmissible hearsay and thus cannot

be used in the context of a summary judgment motion as evidence of any purported "historical

fact." Further responding, plaintiffs aver that the Lovell book post-dates the creation of

Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs'

Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in

this paragraph of the Statement are irrelevant to the parties' dispute.

**PARAGRAPH NO. 64:**

In addition to the other articles and books detailing Anastasia's alleged escape from the
assassination, Peter Kurth wrote a book titled *Anastasia: The Riddle of Anna Anderson.*
Simmons Decl. Ex. H.

**RESPONSE NO. 64:**

The first clause of this paragraph of the Statement is a characterization of counsel and

requires no response here. Further responding, plaintiffs aver that the remainder of said

paragraph is undisputed, although in so responding, plaintiffs aver that the referenced book

constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment

motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the

referenced book post-dates the creation of Plaintiffs' Play and therefore could not have served as

any basis for the creation of Plaintiffs' Play. (See supra ¶ 7.) Further responding, plaintiffs aver

that the purported "facts" set forth in this paragraph of the Statement are irrelevant to the parties'

dispute.

**PARAGRAPH NO. 65:**

A copy of excerpts from Peter Kurth's book titled *Anastasia: The Riddle of Anna Anderson* is
attached to the Simmons Declaration as Exhibit H. Simmons Decl. Ex. H.

**RESPONSE NO. 65:**

Undisputed, although in so responding, plaintiffs aver that the referenced book

constitutes inadmissible hearsay and thus cannot be used in the context of a summary judgment

motion as evidence of any purported "historical fact." Further responding, plaintiffs aver that the

referenced book post-dates the creation of Plaintiffs' Play and therefore could not have served as

any basis for the creation of Plaintiffs' Play. (See supra ¶ 7.)

**PARAGRAPH NO. 66:**

Peter Kurth wrote that the Russian imperial family made an announcement to the world, called
the Copenhagen Statement, that "not a single member of [the Tsar's] family is still alive. How
gladly we would like to believe that one of them, at least, had survived the murderous destruction
of 1918. We would shower our love on the survivor. . . . But in the case of the lady in question
our sense of duty compels us to state that the story is only a fairy tale. The memory of our dear
departed would be tarnished if we allowed this fantastic story to spread and gain credence."
Simmons Decl. Ex. H, at 229.

**RESPONSE NO. 66:**

Undisputed that the Kurth book contains the referenced quotation, although to the extent

that this paragraph of the Statement misstates or mischaracterizes the substance or import of that

quotation, or cites to the same out of context or in a misleading fashion, it is disputed. In so

responding, plaintiffs aver that the Kurth book constitutes inadmissible hearsay and thus cannot

be used in the context of a summary judgment motion as evidence of any purported "historical

fact." Further responding, plaintiffs aver that the Kurth book post-dates the creation of

Plaintiffs' Play and therefore could not have served as any basis for the creation of Plaintiffs'

Play. (See *supra* ¶ 7.) Further responding, plaintiffs aver that the purported "facts" set forth in

this paragraph of the Statement are irrelevant to the parties' dispute.

## PARAGRAPH NO. 67:

Mr. McNally testified that "female royalty in Elizabethan England had ladies-in-waiting, as did many royalty in other societies." Declaration of Terrence McNally (Dkt. No. 38) ¶ 47.

## RESPONSE NO. 67:

Undisputed, although in so responding, plaintiffs aver that the testimony of Mr. McNally

- - who was not offered as an expert witness on Elizabethan England or any other topic - - does

not prove the historical facts recited therein, and that, in any event, the purported "facts" set forth

in this paragraph of the Statement are irrelevant to the parties' dispute.


## PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL DISPUTED FACTS

There exists a genuine issue of fact concerning whether, and if so, to what extent,

defendants actually copied original elements of Plaintiffs' Plays in creating the Musical.[2] This

factual issue arises, *inter alia*, from a conflict between, on the one hand, defendant McNally's

assertions that he created the book of defendants' Musical based on his fondness of Russian

history, deep connection with his grandmother and his "own creative expression" (Defs' Mem. at

---

[2] Defendants' motion relies upon purported historical facts in an effort to obtain summary judgment. Defendants have not proven any such facts, which are irrelevant in any event, because plaintiffs do not base their copyright infringement theory on them. To the extent the Court nevertheless wishes to consider these purported facts, there exists a genuine issue of fact concerning their existence. (See Pls' Opp'n at 47-48.)

4) and that he did not read either the French play by Marcelle Maurette or the English adaptation of that play by Guy Bolton (together, the "Plays") prior to his creation of the book of the Musical (id., citing McNally Decl. ¶ 27, Cendali Decl. Ex. N, at 63: 9–13), and, on the other hand, the substantial evidence demonstrating that defendants' Musical is a derivative work, based on two Twentieth Century Fox films (the "Films") that were, in turn, licensed adaptations of the Plays. The latter facts include the following:

1. In or about 1953, the English Play was performed in London at the St. James Theatre, in a production presented by the renowned English actor Sir Lawrence Olivier, receiving positive reviews. (See Giger Decl. Ex. B.)

2. In 1954, the English Play enjoyed a successful Broadway run at the Lyceum Theatre, also receiving favorable reviews from theater critics, who described the Plays' climactic "Recognition Scene" as "electrifying" and "exhilarating." (Id. ¶ 7, Ex. F.)

3. McNally's involvement in the creation of defendants' Musical began in 2012 or 2013, when he received a telephone call from his colleagues and creative collaborators, lyricist Lynn Ahrens and composer Stephen Flaherty. (McNally Tr. 22:2-19; Giger Decl., Ex. J.)

4. Lynn Ahrens and Stephen Flaherty were the lyricist and composer, respectively, for the 1997 Twentieth Century Fox Film *Anastasia*, which was created under a license from plaintiffs' predecessors. (Id.)

5. Prior to the development of the Musical, McNally collaborated with Ahrens and Flaherty on the Broadway musical *Ragtime*. (Id. 14:10-15:4.)

6. Ahrens and Flaherty told defendant McNally that they were "thinking of turning our animated film into a Broadway musical," and they asked McNally to write the book for the contemplated adaptation of the 1997 Fox Film. (Id. 23:11-19.)

7. McNally rented and viewed both the 1956 and 1997 Fox films (the "Films"), and told his collaborators, Ahrens and Flaherty, that he "can see a stage musical based on their version." (Id. 21:22-24:19, 29:19-24, 38:7-13.)

8. McNally also viewed the 1956 Fox Film at or about the time that it was initially released in theaters. (Id. 29:6-24.)

9. McNally told Ahrens and Flaherty that he would want to make two significant changes to the 1997 Film, namely, that "the key song of the show would no

longer open the story, and the villain . . . in the film [Rasputin] is not going to appear at all." (Id. 44:3-18.)

10. Ahrens and Flaherty agreed to McNally's proposal, and the three of them set out to create a "translation of the animated version [*i.e.*, the 1997 Fox Film] to the Broadway stage" (Id. 79:24-25), which resulted in defendants' Musical.

11. Both of the Fox Films are based upon plaintiffs' Plays. (Giger Decl. ¶¶ 8, 12, 14, 16-18, 20-23 & Exs. G, K, M, O-Q, S-V.)

12. The Fox Films were created under a license from Marcelle Maurette and Guy Bolton, plaintiffs' predecessors, to use the Plays in the creation of theatrical films. (Id. Ex. E, G.)

13. The licenses for the Fox Films ·

(Id. Ex. G, at 11.)

14. The following are excerpts of screen shots from the credits to the 1956 Film and the 1997 Film, respectively:





(Giger Decl. ¶ 25.)

15. The cover for the script of the Musical

(Id. Ex. K.)

16. The Musical has been advertised and promoted as "based upon" and "inspired by" both the 1956 and 1997 Fox Films. (See Id. Ex. T, U.)

35

17. The Musical was created under a license from Twentieth Century Fox ..
(the "Fox License").  (Id. Ex. N, at
ANASTASIA0031123-31124.)

18. The Fox License
(Id.)

19. In the Fox License, Fox
(Id. at ANASTASIA0031123.)

20. The Fox License states,
(Id.)

21. Under the Fox License, the producer of the Musical
. (Id. at
ANASTASIA0031126.)

22. McNally's co-creators, Ahrens and Flaherty, acknowledged in an interview
published on the Internet by *American Theatre* magazine that the Musical is based
upon both the 1956 and 1997 Fox Films. (Id. Ex. V.)

23. In the *American Theatre* interview, Ahrens described the origin of defendants'
Musical as follows:  "Over the years, as other movie companies began to exploit
their movie titles for stage musicals, Fox decided, 'Oh, we have all these great
movies, we should do that to.'  First and foremost was *Anastasia*."  (Id.)

24. Defendants' prior counsel contacted representatives of plaintiffs regarding a
possible license to use the Plays in the creation of their Musical, and engaged in
negotiations toward that end, but the parties failed to reach agreement.
(O'Donnell Decl. ¶¶ 3-4.)

25. Defendants have not obtained any license or other rights to use the Plays in the
creation of the Musical.  (Id. ¶ 5.)

26. Defendants proceeded with the creation and presentation of the Musical with full
knowledge of the Plays and despite their failure to obtain a license or any rights in
the Plays from plaintiffs. (Id. ¶ 5; Giger Decl. Ex. N.)

Dated:  January 8, 2018
         New York, New York

36

ROSENBERG & GIGER P.C.

By: _____

John J. Rosenberg
Matthew H. Giger
Brett T. Perala
250 Park Avenue, 12th Floor
New York, NY 10177
Tel: (646) 494-5000
Fax: (646) 595-0590
jrosenberg@rglawpc.com
mgiger@rglawpc.com
bperala@rglawpc.com

*Attorneys for Plaintiff*
*Jean-Etienne De Becdelievre*

and

MANATT, PHELPS & PHILLIPS, LLP
Robert A. Jacobs
Prana A. Topper
7 Times Square
New York, NY 10036
Tel: (212) 790-4500
Fax: (212) 790-4545
rjacobs@manatt.com
ptopper@manatt.com

*Attorneys for Plaintiff*
*Tams-Witmark Music Library, Inc.*